Beys **AFROYIM**, Plaintiff-Appellant,

v.

Dean **RUSK**, as Secretary of State, Defendant-Appellee.

No. 393, Docket 30413.

United States Court of Appeals Second Circuit.

Argued May 10, 1966.

Decided May 24, 1966.

Nanette Dembitz, New York City, for appellant.

James G. Greilsheimer, Spec. Asst. U. S. Atty.; Robert M. Morgenthau, U. S. Atty., S. D. N. Y.; Francis J. Lyons, Spec. Asst. U. S. Atty., for appellee.

Before WATERMAN, KAUFMAN and ANDERSON, Circuit Judges.

WATERMAN, Circuit Judge.

Plaintiff commenced a declaratory judgment action in the United States District Court for the Southern District of New York challenging the constitutionality of 8 U.S.C. § 1481(a) (5). He alleged that the section is both unconstitutional on its face and as applied to him in that it violates the due process guarantee of the Fifth Amendment and violates Section 1, Clause 1 of the Fourteenth Amendment.

After cross-motions for summary judgment had been filed by both parties, the court below in a reasoned opinion, reported at 250 F.Supp. 686 (S.D.N.Y. 1966), granted the motion filed by the defendant Secretary of State and dismissed plaintiff's complaint on the ground that there was no genuine issue as to any material fact and that the Secretary was entitled to judgment as a matter of law.

Plaintiff, who had been a naturalized citizen of the United States, had suffered the loss of that citizenship on November 14, 1960, on the ground that he had expatriated himself on July 30, 1951, when he had voluntarily voted in an Israeli parliamentary election.[1]

The court below handed down its order upon a stipulation of the parties which set forth the material facts:

"1. Plaintiff, who was born in Poland in 1893, emigrated to the United States in 1912. Plaintiff under the name of Ephraim Bernstein, also known as Beys Afroyim, became a naturalized citizen by order of this Court on June 14, 1926.

"2. On July 30, 1951 plaintiff voted in the elections for the second Knesset, the Parliament of the State of Israel.

"3. The election for the second Knesset was a political election in a foreign state within the contemplation of Section 401(e) of the Nationality Act of 1940.

"4. Plaintiff voluntarily voted in the said election.

"5. Plaintiff contends that neither at the time of the election nor at any other time did he have any intention or desire to lose or abandon his American citizenship. Plaintiff also contends that he considered himself at all times an American citizen with allegiance to the United States. Defendant will not stipulate with respect to the truthfulness of these allegations. Defendant also maintains that these allegations are irrelevant since a specific intent or desire to lose or abandon American citizenship is not a requisite for expatriation under Section 401(e) of the Nationality Act of 1940.

"6. On November 14, 1960 the American Vice Consul at Haifa, Israel, issued a Certificate of Loss of Nation-

---

1. Section 401 of the Nationality Act of 1940, 54 Stat. 1137, as amended by the Act of September 27, 1944, 58 Stat. 746; 8 U.S.C. (1946 ed.) § 801 provides: § 801. General means of losing United States nationality.

A person who is a national of the United States, whether by birth or naturalization, shall lose his nationality by:

 * * * * *

(e) Voting in a political election in a foreign state or participating in an election or plebiscite to determine the sovereignty over foreign territory.

This provision of the Nationality Act of 1940 was preserved in the Immigration and Naturalization Act of 1952, Ch. 477, Title III, ch. 3, Section 349(a) (5), 66 Stat. 267; 8 U.S.C. § 1481(a) (5).

ality to plaintiff on the ground that he expatriated himself on July 30, 1951 under Section 401(e) of the Nationality Act of 1940 by voting in a political election in a foreign state. The Vice Consul's action was approved by the Passport Office of the Department of State on January 4, 1961. Plaintiff on January 27, 1965 appealed to the State Department's Board of Review on the Loss of Nationality, and on May 3, 1965 the Board affirmed the Vice Consul's determination."

In his brief upon appeal appellant claims the statute violates the First, Sixth, and Eighth Amendments as well as the Fifth and Fourteenth; the First because Congress has sought by the Act to impose a drastic sanction upon a citizen's freedom to express his opinion on political, social or economic issues, and the Sixth and Eighth because the statute appears to have a punitive ring to it and the safeguards guaranteed by the Sixth to one charged with crime are not made available to one who may suffer, as did this appellant, a claimed "unusual punishment" barred by the Eighth.

We are of course bound by the authority of Perez v. Brownell, 356 U.S. 44, 78 S.Ct. 568, 2 L.Ed.2d 603 (1958) wherein a native-born American citizen who voted in a Mexican political election, and who had lost his citizenship thereby, sought to have the U. S. Supreme Court hold that the predecessor statutory provision here challenged was beyond the power of Congress to enact—and wherein the constitutionality of the legislation was upheld.

Appellant contends that subsequent decisions of the Court have so devitalized Perez that its holding is no longer a binding precedent. Our attention is directed as evidence of this claimed devitalization to the case of Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), which held, as to the citizens involved, 8 U.S.C. § 1481(a) (10), a different provision of 8 U.S.C. § 1481(a) from the one before us here, unconstitutional. However, the result reached in Perez was not affected by Mendoza-Martinez, see the opinion for

the Court, 372 U.S. 144, at 162–163, 83 S.Ct. 554, the reservations of concurring Justices, pp. 186, 187, 83 S.Ct. pp. 576, 577, and the statement for the dissenting Justices, pp. 202, 203, 83 S.Ct. p. 585.

Also, we are asked to consider the result the Court reached in Schneider v. Rusk, 377 U.S. 163, 84 S.Ct. 1187, 12 L.Ed.2d 218 (1964) as also indicative of a weakening of the Perez authority. However, 377 U.S. at 166–167, 84 S.Ct. 1187 of the Court's opinion, written by a Perez dissenter, there is a careful explanation of the specific ground upon which Schneider was distinguished from Perez.

We are even urged to disregard Perez because of the holding in a case contemporaneously decided, Trop v. Dulles, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958). In Trop, on the facts there, the Court held that 8 U.S.C. § 401(g), now 8 U.S.C. § 1481(a) (8), again a different provision from 8 U.S.C. § 1481(a) (5), was as to Trop an unconstitutional enactment while at the same time holding 8 U.S.C. § 401(e) constitutional. The thrust of this argument is that the Court in Perez did not appear to consider that a denaturalization might be a punishment though the Court had that in mind in Trop, decided the same day.

Subsequent to all of the Supreme Court cases cited to us and set forth supra, we have, within the year, recognized in Tanaka v. Immigration & Naturalization Service, 346 F.2d 438 (2 Cir. 1965), the binding authority of Perez. We said there:

"It is not open to question that the voluntary act of voting in a foreign election in 1950 results in expatriation under § 401(e) of the Nationality Act of 1940, the constitutionality of this provision having been expressly affirmed in Perez v. Brownell, 356 U.S. 44, 78 S.Ct. 568, 2 L.Ed.2d 603 (1958). However, no conduct results in expatriation unless it is voluntary. Nishikawa v. Dulles, 356 U.S. 129 [78 S.Ct. 612, 2 L.Ed.2d 659]." (Emphasis supplied.) 346 F.2d 438, 441.

Admittedly, as stipulated in this case, appellant's participation in the Israeli

election was voluntary. Moreover, no claim is made on appeal that appellant has acquired Israeli citizenship and can therefore be claimed to have dual nationality.

We affirm the judgment below on the authority of Perez v. Brownell, supra, and Tanaka v. Immigration & Naturalization Service, supra.

The exposition by the court below of the present posture of the issues that were decided by the Court in Perez was exhaustive and most penetrating, and we adopt as the rationale for our own opinion the following language in the opinion below 250 F.Supp. at 690:

"Suffice it to say that Perez, read as a whole, holds that the Constitution does not deny Congress the power to prevent American citizens from engaging in the processes of political decision in a foreign state, regardless of whether our government is interested one way or another in the specific outcome of the election or interested only in maintaining an appearance of circumspect neutrality. Perez confirmed a Congressional power to determine that the formulation of sensitive political decisions vitally important to a foreign state—and indirectly affecting the international community at large—should properly be conducted without the participation of American citizens."

Affirmed.

KAUFMAN, Circuit Judge (concurring):

I feel constrained to concur—albeit reluctantly. In Tanaka v. Immigration & Naturalization Service, 346 F.2d 438 (2d Cir. 1965) (dissenting opinion), I expressed grave doubt as to whether the Supreme Court's opinion in Perez v. Brownell, 356 U.S. 44, 78 S.Ct. 568 (1958) retained vitality. And, I questioned there whether Perez was not to be limited to its facts in the face of the Court's subsequent holdings in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S.Ct. 554 (1963) and Schneider v. Rusk, 377 U.S. 163, 84 S.Ct. 1187 (1964). I am still of the view that the Supreme Court's opinion in Perez, a bare majority of one ruling, should be narrowly construed and strictly confined to its facts until that Court is asked to review its interpretation of Section 401(e) of the Nationality Act of 1940,* an event which I believe is inevitable in light of the series of perplexing denationalization opinions rendered by the Supreme Court in its 1963 term. See Kurland, The Supreme Court 1963 Term—Forward: Equal in Origin and Equal in Title to the Legislative and Executive Branches of the Government, 78 Harv.L.Rev. 143, 169–175 (1964). And, it is not of little interest that Justice Brennan, a member of the five-to-four Perez majority subsequently expressed his own "doubts of the correctness of Perez, which I joined." Kennedy v. Mendoza-Martinez, supra, 372 U.S. at 187, 83 S.Ct. at 577.

Furthermore, the *ratio decidendi* of Perez is not persuasive when applied to the instant facts. I see no reason why an individual who performed the act of voting in a foreign election, after full disclosure of his American ties should be visited with such severe consequences as loss of citizenship and the deportation which will inevitably follow, without a showing that his voting somehow impeded or interfered with the conduct of this country's foreign affairs. Such interference was the "rational nexus" which Mr. Justice Frankfurter found so essential in Perez and which is wholly missing here.

I lean to the view that if Afroyim had not expressly stipulated the facts of his case so as to bring it squarely within the ambit of Perez, the result here might have been different. To illustrate, the administrative record, discloses that unlike Perez who did not reveal his American citizenship to the Mexican authorities when he voted there, Afroyim presented his identification booklet—a docu-

---

* This provision has been carried forward as Section 349(a) (5) of the Immigration and Naturalization Act of 1952.

ment which described him as an American citizen—to the Israeli election officials. Thus, Israeli authorities, knowing of Afroyim's American citizenship, would seem to have openly ignored any objection that country might have had to a non-Israeli voting in its elections. It is fair to infer from this that any risk of embarrassment to this country's relationship with Israel by reason of the involvement of Afroyim in Israel's internal affairs was thus removed.

However, in light of the stipulation in this case and because the majority of two panels of this Court believes that *Perez* has not become moribund, I concur reluctantly, as I have already indicated, in the result reached in the majority opinion.